(15 Misc. Rep. 522; 2 N. Y. Ann. Cas. 411.)

TEDESCO et al. v. OPPENHEIMER et al.

(Supreme Court, Special Term, New York County. January, 1896.)

1. FRAUDULENT CONVEYANCE—CHANGE OF POSSESSION.
Under Laws 1833, c. 279 (providing that every conveyance intended as a mortgage of chattels, "which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession," shall be void against creditors), the mortgagee has not sufficient possession, in the case of a bill of sale given as a mortgage, where the articles remain in the mortgagor's store, and the mortgagee's name nowhere appears in connection with the business, but, so far as the public has means of knowing, the mortgagor continues to be the owner and possessor, though an arrangement is made by which the mortgagee pays the store rent, and agrees to pay the mortgagor a salary, and the mortgagor is to hold the articles, on consignment, for the mortgagee.

2. CHATTEL MORTGAGE OR PLEDGE.
Where a bill of sale of pictures is given for the purpose of giving security, it must be held a mortgage, and not a pledge.

Action by Joseph Tedesco and others against Richard Oppenheimer and others to set aside bills of sale as mortgages void against creditors, because not filed. Judgment for plaintiffs.

George W. Seligman, for plaintiffs.
George M. Mackellar, for defendants.

BEEKMAN, J. The defendant Oppenheimer, being indebted to the Harlem River Bank, gave the latter three bills of sale, covering a large number of pictures, as security for a past indebtedness and for future advances. The bills of sale bore date, respectively, on the 20th day of May, 1892, the 15th day of September, 1892, and the 15th day of February, 1893. In September, 1892, his indebtedness amounted to about $15,000, and in May, 1894, when the bank

passed into the hands of a receiver, it had increased to the sum of about $24,000; so that, during this intervening period, the bank had apparently continued to make advances under its arrangement with Oppenheimer. The bills of sale were absolute in form, each expressing a substantial money consideration, and, in terms, transferred the title without qualification. The plaintiffs are judgment creditors of the defendant Oppenheimer, and bring this action to set aside these transfers, on the ground that they were intended to and did operate as chattel mortgages, and as such were void, because they were not filed as required by law, the property having remained in the possession of the mortgagor. The receiver of the bank alone contests the action, and, while admitting that the bills of sale were never filed, insists that the bank was in possession of the property. He also contends that the transfer was not by way of mortgage, but that the pictures were pledged to the bank, and that the arrangement between it and the defendant Oppenheimer, which will be mentioned later, gave it sufficient control over and possession of the property to support the pledge as against Oppenheimer's creditors.

Whether the possession was adequate for this purpose it is unnecessary to inquire, as I am of the opinion that the transaction was really a mortgage of the property, and the turning point of the case is found in the solution of the question whether the bank, as mortgagee, had that possession of the property which satisfies the requirements of the statute.

Chapter 279 of the Laws of 1833 provides that:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, *which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession* of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section of this act."

I have italicized a portion of the quotation in order to call attention to the clear and vigorous language used to define the possession which must exist in order to exclude a case from the operation of the statute. Little room is left here for judicial construction, and the conclusion is immediate that the change of possession intended is physical, and not merely legal or constructive. The mischief which the law was intended to prevent was the deceptive and resultant injury which would inevitably arise from the indicia of ownership being vested in one who had no title, or only a defeasible one, and who would thus be in a position to secure credit to which he was not entitled, and to perpetrate frauds upon the public, deluded by the evidence of title which the possession and visible dominion over property bespeaks. It is therefore a necessary feature of the possession to which the statute refers that it should be open, visible, and free from concealment. It then becomes notice in its highest form of the claim of the possessor, and the constructive notice which arises from the filing of the mortgage becomes unnecessary. But where the change of possession is not of that character, so that it fails to disclose itself

to others than the immediate parties to the transfer, however hon-est they may have been in their intentions, the situation exists which the statute was designed to prevent.    Crandall v. Brown, 18 Hun, 461; Hale v. Sweet, 40 N. Y. 97; Steele v. Banham, 84 N. Y. 634.    In Steele v. Benham the authorities are reviewed for the purpose of showing the insistence of the courts upon a literal con-struction of the statute.    Among these, the case of Topping v. Lynch, 2 Rob. (N. Y.) 484, is referred to, where it was said that the words " 'actual and continued' are applied to the change of pos-session.    They mean an open public change of possession, which is to continue and be manifested continually by outward and visible signs, such as render it evident that the possession of the judg-ment debtor has ceased."

The possession claimed in this case on the part of the bank ut-terly fails to come within the prescription of the statute.    It was not until the month of September, 1892, about the time when the second bill of sale was made, that any attempt was made to secure even a colorable custody of the property.    An arrangement was then made with Oppenheimer by which he was to hold the pictures in question on consignment for the bank.    They were then in Oppenheimer's store, and continued to remain there.    The bank paid the rent, and agreed also to pay Oppenheimer $50 a week for his services.    But the name of the bank nowhere appeared in con-nection with the business; there was no visible change of posses-sion; and, so far as the public had the means of knowing, Oppen-heimer continued to be the owner and possessor of the property to the same extent as he always had seemed to be.    He sold some of the pictures, and the bank received the proceeds, but to the public he was acting exclusively in his own right in so doing.    Nor was this the result of any oversight on the part of the bank.    It was quite deliberate.    The vice president testifies that the arrange-ment with Oppenheimer was that the business was to be conducted and the pictures sold in his own name, and that, when he sug-gested the expediency of having the business done in the bank's name, the directors objected, on the ground that it was not the business of the bank to sell pictures.    In view of this, it is quite unnecessary to refer to the appearance of control by the bank which was kept up between it and Oppenheimer.    It is sufficient to say that it was between them alone, and the public were advisedly ex-cluded from their confidence.    It is therefore quite plain that the bank did not have that possession of the property which the stat-ute demands, and, having failed to file the bills of sale, it must ac-cept the consequences which the statute declares in pronouncing such a transaction to be absolutely void.

The counsel for the receiver earnestly contends that the court, failing to find grounds for supporting the transaction as a mort-gage, should, ex debito justitiæ, sustain it as a pledge.    The diffi-culty with this is that, upon the undisputed facts of the case, there was no pledge.    A characteristic feature of the law of pledge is that the title, except in certain cases where the property is intan-

gible, does not pass. Here the intention that the title to the property should vest in the bank was unmistakable. The form of the transaction shows it, and the claim made by the officers of the bank has been that of ownership. The facts of the case must determine the legal principles which are to be applied, and the court has no right to formulate an inconsequent conclusion, although a result may thus be reached in better accord with abstract justice. I am therefore constrained to find that the bills of sale in question were intended to operate by way of mortgage; that there was no change of possession of the property; and that, the bank having failed to file them as required by the statute, the plaintiffs are entitled to judgment setting them aside. Judgment for plaintiffs, with costs.